**UNITED STATES DISTRICT COURT**
**DISTRICT OF MINNESOTA**

---

Elijah J.,

Petitioner,

v.

Todd Blanche, *Attorney General*, et al.,

Respondents.

No. 0:26-cv-04473 (KMM/DJF)

**ORDER**

---

This matter is before the Court on Petitioner Elijah J.'s ("Petitioner" or "Elijah") Petition for a Writ of Habeas Corpus. (Pet., Dkt. 1). Elijah alleges that he is entitled to the writ because Respondents took him into immigration custody without a valid warrant and without a lawful basis to make a warrantless arrest. He claims that the administrative warrant for his arrest is invalid because it was not preceded by a Notice to Appear. For the reasons discussed below, the Petition is granted.

## BACKGROUND

Elijah is a citizen of Liberia.[1] (Swirka Decl., Ex. A at 2 (Form I-213 Report), Dkt. 7-1; Counseled Reply at 2 n.2, Dkt. 13.) On July 12, 2024, Elijah was admitted to the United States. (Ex. C at 1 (Notice to Appear), Dkt. 7-3.) The government later admitted him as a lawful permanent resident on April 8, 2025. (*Id.*) However, on December 22, 2025, Elijah

[1] Although Petitioner originally alleged that he is a citizen of Ghana (Pet. at 1), and a DHS Form I-213, Report of Deportable/Inadmissible Alien states the same (Skwira Decl., Ex. A at 1, Dkt. 7-1), the record elsewhere indicates Petitioner is native and citizen of Liberia (*id.* at 2). Petitioner's court-appointed counsel indicates that Petitioner confirmed he is a citizen of Liberia. (Counseled Reply at 2 n.2, Dkt. 13.)

was convicted in Scott County District Court of Criminal Sexual Conduct in the second degree in violation of Minn. Stat. § 609.343, subd. 1a(e). (*Id.* at 4.) The state court sentenced Elijah to a 36-month prison term, stayed its execution for five years, and required Petitioner to serve 210 days in confinement at the Scott County Jail. *State v. Elijah J.*, No. 70-CR-25-4460, Index #26 (Scott Cnty. Dist. Ct. Dec. 12, 2025), https://publicaccess.courts.state.mn.us/CaseSearch.

On February 16, 2026, "Deportation Officer Daud" from Immigration and Customs Enforcement ("ICE") reviewed jail booking records at the Scott County Jail and learned that Elijah was detained there as he served the 210-day jail term. (Ex.A at 2.) According to the Form I-213 report prepared by Deportation Officer Paul Skwira, "Deportation Officer Dodd[2] lodged an Immigration Detainer, Form I-247A and Acting Supervisory Deportation and Detention Officer Griffiths issued an I-200, Warrant of Arrest of Alien." (Ex. A at 2; Ex. B at 1 (Form I-200[3]), Dkt. 7-2; Ex. B at 2–5 (Form I-247A Detainer).)

The Warrant states that Deportation Officer Griffiths determined that there is probable cause to believe Elijah is removable from the United States based in part on "the pendency of ongoing removal proceedings" against him. (Ex. B at 1.) Officer Skwira's report makes no mention of a Notice to Appear being issued prior to the I-200 Warrant.

---

[2] It is not entirely clear from the record whether the ICE agents identified in the Form I-213 report as "Deportation Officer Daud" and "Deportation Officer Dodd" are the same individual.

[3] The Form I-200 Warrant for Elijah's arrest is dated February 16, 2026. (Ex. B at 1.) The Immigration Detainer is dated May 20, 2026. (Ex. B at 2.)

Petitioner was still confined in Scott County Jail through May 20, 2026. That day, "Officer Pereira responded to the Scott County Jail, identified himself as an Immigration Officer, served the I-200, placed [Petitioner] under arrest in a secure area and transported him to [Enforcement and Removal Operations] in St. Paul for booking and administrative processing." (Ex. A at 2.) And on May 20, a Supervisory Deportation and Detention Officer issued a Form I-862, Notice to Appear ("NTA"), alleging that Petitioner is subject to removal from the United States under Immigration and Nationality Act ("INA") Section 237(a)(2)(A)(iii) and Section 237(a)(2)(E)(i).[4] (Ex. C. at 4.) Deportation Officer Skwira served the NTA on Elijah on May 20, though the record suggests that Petitioner refused to sign it acknowledging service. (Ex. C at 3.) The NTA ordered Petitioner to appear before an Immigration Judge ("IJ") on June 2, 2026. (Ex. C at 1.)

On August 17, 2026, Immigration Judge Audrey Carr ordered Petitioner removed to Liberia. (Ex. D at 3.) IJ Carr also denied Elijah's request for deferral of removal under the Convention Against Torture. (Ex. D at 1.) Petitioner reserved his right to appeal the IJ's

---

[4] INA Section 237 is codified at 8 U.S.C. § 1227. Section 1227 establishes "classes of deportable aliens" who are "in and admitted to the United States" that shall be removed. § 1227(a). Section 1227(a)(2)(A)(iii) provides that the following persons are subject to removal: "[a]ny alien who is convicted of an aggravated felony at any time after admission is deportable." Sexual abuse of a minor is an aggravated felony for purposes of this provision. 8 U.S.C. § 1101(a)(43)(A). Because Elijah was convicted of an aggravated felony under § 1227(a)(2)(A)(iii), the INA requires DHS to take him into custody, *see* 8 U.S.C. § 1226(c)(1)(B), and the government "may release" him "only if" "necessary to provide protection" to certain witnesses of criminal activity, and if he "satisfies [the DHS Secretary] that [he] will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding." 8 U.S.C. § 1226(c)(4).

decision (Ex. D at 4), and Petitioner has appealed the removal order to the Bureau of Immigration Appeals (Counseled Reply at 3).

Elijah filed his Petition *pro se* on October 13, 2026. Respondents answered on October 23, 2026. After receipt of Respondents' submission, the Court appointed counsel for Petitioner under 18 U.S.C. § 3006A(a)(2)(B) and extended the time for the appointed attorney to file a reply in support of the Petition. (Dkt. 9.) Appointed counsel did so on November 6, 2026, making the parties' dispute ripe for a decision.

## DISCUSSION

### I. Legal Standard

District courts may grant a petition for a writ of habeas corpus when the petitioner is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). The petitioner has the burden of proving his detention is illegal by a preponderance of the evidence. *Jose J.O.E. v. Bondi*, 797 F. Supp. 3d 957, 965 (D. Minn. 2025).

### II. Analysis

The issue in this case is straightforward. Petitioner claims that his arrest was unlawful because Respondents took him into custody pursuant to an I-200 warrant that was issued before the Notice to Appear. Analysis of this claim begins with the authority that Congress has given to immigration authorities to arrest noncitizens in connection with removal proceedings. *FEC v. Cruz*, 596 U.S. 289, 301 (2022) ("An agency, after all, 'literally has no power to act'—including under its regulations—unless and until Congress authorizes it to do so by statute." (quoting *Louisiana Pub. Serv. Comm'n v. FCC*, 476 U.S.

355, 374 (1986)); *Carlos F.P.P. v. Blanche*, No. CV 26-3123 (JWB/JFD), 2026 WL 2824801, at *2 (D. Minn. Sept. 21, 2026) (same) (quoting *Cruz*, 476 U.S. at 301).

There are "two mechanisms by which 'it is appropriate to arrest an alien during the removal process.'" *Cesar F.F. v. Blanche*, No. 26-cv-2540 (PJS/DTS), Dkt. 8 at 3 (D. Minn. June 2, 2026) [hereinafter *Cesar F.F.* Order] (quoting *Arizona v. United States*, 567 U.S. 387, 407 (2012)). First, "[o]n a warrant issued by the Attorney General, an alien may be arrested and detained pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a). Second, the law allows for a warrantless arrest in limited circumstances. *See* 8 U.S.C. § 1357(a)(2).

Under the first mechanism, immigration authorities may arrest a noncitizen for the purposes of removal proceedings pursuant to an administrative warrant known as a Form I-200, Warrant of Arrest. *See* 8 C.F.R. § 236.1(b)(1). Such a warrant is valid when it is issued at the same time as ICE issues a notice to appear, or any time after the NTA has been issued. 8 C.F.R. § 236.1(b)(1) ("At the same time of the issuance of the notice to appear, or at any time thereafter and up to the time removal proceedings are completed, the respondent may be arrested and taken into custody under the authority of Form I-200, Warrant of Arrest."); *Martha C.G.P. v. Blanche*, No. 26-cv-2308 (DWF/JFD), 2026 WL 1329577, at *3 (D. Minn. May 13, 2026) ("Respondents may arrest a noncitizen using a Form I-200 only if the Form I-200 issues at the same time or after the Department of Homeland Security issues an NTA.").

The second means of arresting a noncitizen is under the warrantless-arrest authority provided in 8 U.S.C. § 1357. In the provision relevant here, such an arrest is permissible

only if there is "reason to believe that the alien so arrested is in the United States in violation of any [immigration] law or regulation and is likely to escape before a warrant can be obtained for his arrest[.]" 8 U.S.C. § 1357(a)(2). By its plain language, § 1357(a)(2) contains two separate requirements: (1) that the individual is in the United States in violation of immigration laws; and (2) that he is likely to escape before a warrant can be obtained for his arrest. And in this context, "the term 'reason to believe' . . . means constitutionally required probable cause." *United States v. Quintana*, 623 F.3d 1237, 1239 (8th Cir. 2010).

Petitioner argues that his arrest complied with neither the first nor the second mechanism because (1) the I-200 warrant was not issued at the same time as the NTA or after it, and (2) there was no basis for a warrantless arrest. Respondents put all their eggs in the first basket and make no argument concerning the second. (Resp. at 8 ("Because Petitioner was arrested with a valid I-200 administrative warrant, Respondents satisfied the Alien Arrest Statute, and the Warrantless Arrest Statute, 8 U.S.C. § 1357(a), has no application.").[5] So, the focus is on whether Petitioner was arrested on a valid warrant.

The Supreme Court has not addressed whether an I-200 warrant issued before an NTA can justify an arrest of a noncitizen for purposes of removal proceedings. Neither has the Eighth Circuit Court of Appeals. But in numerous decisions from the District of

[5] Because Respondents present no argument regarding the application of § 1357(a)(2) to the facts of this case, they have waived that issue. The Court suspects Respondents took this approach because the arresting officers took the step of obtaining an I-200 warrant first and it was issued prior to Elijah's arrest. Regardless of the reason, there is no basis in the record from which the Court could conclude that, in the absence of a *valid* warrant, Respondents had the authority to make an arrest in compliance with § 1357(a)(2).

Minnesota, courts have repeatedly held that an arrest of a noncitizen is invalid when the NTA is not issued prior to or contemporaneously with the issuance of a Form I-200. *Tha I. v. Blanche*, No. 26-CV-3516 (LMP/DLM), 2026 WL 3093493, at *1 (D. Minn. Oct. 16, 2026); *Alejandro C. G. v. Blanche*, No. 26-cv-3117 (ECT/EMB), 2026 WL 2838175, at *2 (D. Minn. Sept. 22, 2026) (collecting cases). The Court finds these cases persuasive and follows them here.

The evidence in this case is clear—the I-200 Warrant for Elijah's arrest did not issue "at the same time of the issuance of the notice to appear, or at any time thereafter." 8 C.F.R. § 236.1(b)(1). The warrant issued on February 16, 2026, several months before the NTA issued on May 20, 2026. And while the warrant itself purports to have been based upon the issuing officer's determination that there were "ongoing removal proceedings against" Petitioner (Ex. B at 1), that statement was incorrect. On February 16, 2026, no NTA had issued, and the issuance of an NTA is a prerequisite to the commencement of removal proceedings. Indeed, "an NTA is a case-initiating pleading – like an indictment in a criminal case – that serves as the bases for commencing a grave legal proceeding." *Alejandro C.G.*, 2026 WL 2838175, at *3 (quoting *Jesus F.D. v. Mulin*, No. 26-cv-2486 (PJS/DTS), slip op. at 5–6 (D. Minn. June 10, 2026), ECF No. 10) (cleaned up). "Thus, a warrant issued before removal proceedings have begun purports to exercise authority that does not yet exist." *Id.* (quoting *Jesus F.D.*, slip op. at 5–6).

Because Respondents arrested Elijah on an I-200 warrant that was issued long before issuance of an NTA, the warrant was not a valid exercise of ICE's arrest authority and was noncompliant with the clear language of the governing regulation.

The Court has carefully considered Respondents' arguments that the timing of the issuance of the warrant and the NTA does not render the warrant invalid. None persuades the Court that it should deviate from the overwhelming majority of persuasive cases from this District that have concluded otherwise. For example, Respondents suggest that the timing of the issuance NTA in relationship to the I-200 warrant is of no moment because "the guidelines of [8 C.F.R.] § 236.1(b) do not establish the jurisdiction of the Immigration Judge, for the mere issuance of a Notice to Appear does not vest jurisdiction—only filing does." (Resp. at 4; *see also id.* at 4–5.) But the Court's analysis, and the analysis of other cases reaching the same conclusion do not hinge on when jurisdiction vests with an immigration judge. Rather, these cases focus on the straightforward language of the regulation that establish when a noncitizen subject to arrest under 8 U.S.C. § 1226 "may be arrested and taken in to custody under the authority of Form I-200, Warrant of Arrest." 8 C.F.R. § 236.1(b)(1); *see Gonzalez Ochoa v. McCleary*, 816 F. Supp. 3d 921, 927 (S.D. Iowa 2026) ("The temporal aspects of this language are clear: an arrest warrant may be issued at the time of issuance of the Notice to Appear or thereafter. Not before.") (cleaned up). Respondents' vesting-of-jurisdiction argument does not overcome this clear language.

Respondents further argue that the "statutory and regulatory context" for § 236.1(b)(1) shows that "it is clearly a recommendation of agency procedures," as

demonstrated by the "In general" clause that precedes its operative language.[6] And Respondents suggest that if the regulation operates as "an absolute constraint on ICE's power to arrest based on an independent warrant," that would contradict "Congress's clear commands to 'take into custody'" a noncitizen like Petitioner. (Resp. at 7.) Respectfully, the Court disagrees. Nothing about § 236.1(b)(1) suggests that it is a mere "recommendation" of procedure. "A Form I-200 warrant empowers ICE to arrest aliens during removal proceedings," and when the warrant precedes the NTA, a prerequisite to initiation of those removal proceedings, the warrant "purports to exercise authority that does not yet exist." *Alejandro C.G.*, 2026 WL 2838175, at *3 (quoting *Jesus F.D.*, slip op. at 5–6). Respondents point to no statute, regulation, or caselaw indicating that Congress has bestowed upon the Department of Homeland Security, ICE, or any other agency the authority to issue warrants to take noncitizens into custody for removal proceedings independent of the actual initiation of those proceedings. And Congress has constrained the ability to make *warrantless* arrests for civil immigration detention of noncitizens to circumstances specifically delineated by statute in § 1357(a)(2).

Nor does the Court perceive any inconsistency of § 236.1(b)(1)'s terms with the provisions of 8 U.S.C. § 1226. Congress has provided that "[o]n a warrant issued by the [DHS Secretary], an alien may be arrested and detained pending a decision on whether the

[6] Other courts have found Respondents' reliance on the "In general" heading does not indicate that issuance of an NTA is not a prerequisite to arrest on a warrant. *Kurt D. v. Blanche*, No. 26-CV-3320 (JWB/DJF), 2026 WL 2794179, at *3 (D. Minn. Aug. 7, 2026) (rejecting respondents' argument that the "In general" preface to the regulation "indicates that an NTA is not always a prerequisite to arrest"), *R&R adopted*, No. 26-cv-3320, Doc. 16 (Aug. 20, 2026).

alien is to be removed from the United States[.]" 8 U.S.C. § 1226(a). While DHS may grant bond to certain noncitizens arrested in this manner, *id.* § 1226(a)(2), for those who have been convicted of certain offenses, the statute requires DHS to detain them, subject to only narrow exceptions where they may be released, *id.* § 1226(c)(1)(B), (c)(4). That category of criminal aliens are the ones that DHS "shall take into custody" pending the completion of removal proceedings, *id.* § 1226(c)(1), but immigration authorities still must derive their arrest authority from either the warrant described in § 1226 or the warrantless arrest powers granted in § 1357. It is entirely consistent with these provisions for agency rulemaking to have crafted a regulation that requires DHS to issue a notice to appear before issuing an arrest warrant.

Finally, the Court is not persuaded by Respondents' contention that, even if ICE violated 8 C.F.R. § 236.1(b)(1) and arrested Petitioner without a valid warrant, release is not the appropriate remedy.[7] (Resp. at 8–10.) This Court has previously held that release from custody is appropriate when an arrest is made without a valid warrant and

[7] Respondents cite the Eighth Circuit's decision in *Puc-Ruiz v. Holder*, 629 F.3d 771 (8th Cir. 2010) for the proposition that a claim based on a regulatory violation requires a showing of prejudice, which they argue Petitioner has failed to demonstrate. *Puc-Ruiz* is not a habeas case assessing whether release is an appropriate remedy for a regulatory violation that leads to immigration detention. Rather, it is a noncitizen's appeal from an IJ's order removing him from the United States where the Puc-Ruiz sought to suppress statements and documentation regarding his national origin and citizenship that were obtained by ICE. *Id.* at 775, 777. In the passage relied upon by Respondents, the *Puc-Ruiz* court considered the standards for suppression of evidence applied by the BIA in connection with an alleged violation by ICE of 8 C.F.R. § 287.3. *Id.* at 780. Respondents' do not explain how a discussion of what is required to "invalidate deportation proceedings" (Resp. at 9) is applicable in this context. Therefore, the Court is not persuaded by this argument.

immigration officers did not have probable cause to support a warrantless arrest under § 1357(a)(2). *Emily Andreia N.V. v. Blanche*, No. 26-cv-2570 (KMM/EMB), 2026 WL 2209844, at *4–5 (D. Minn. July 31, 2026).

Because the Court concludes that Elijah was not arrested on a valid warrant at the time of his arrest, and because Respondents have not shown that his arrest complied with § 1357(a), the Court will order his release.

**ORDER**

Accordingly, **IT IS HEREBY ORDERED THAT**:

1. Petitioner Elijah J.'s Petition for a Writ of Habeas Corpus (Dkt. 1) is **GRANTED**.

2. Respondents are **ORDERED** to release Petitioner Elijah J. within 24 hours of the issuance of this Order, at a time and place communicated in advance to Petitioner's counsel, and with all his possessions.

3. Nothing in this Order precludes Respondents from later arresting or detaining Petitioner pursuant to lawful authority and in compliance with applicable statutory and regulatory requirements.

4. Within 48 hours of this Order, Respondents shall file an update on the docket showing that such release has taken place.

**Let Judgment be entered accordingly**.

Date: November 18, 2026

*s/Katherine Menendez*
Katherine Menendez
United States District Judge